# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                                  No. 06-CR-2374 JH

RAMON LUIS URQUIDI-ALVARADO,

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court for bench trial on the 3rd day of October 2007 with respect to the charge contained in the Indictment--*i.e.*, re-entry of a removed alien, in violation of 8 U.S.C. Sections 1326(a) and 1326(b). At trial, the Defendant was represented by Albert J. Granger, Esq., and the Government was represented by Assistant United States Attorney Norman Cairns. At the conclusion of the one-day bench trial, the Court informed the parties that it would render its decision in a written opinion. The Court, having considered the evidence presented at trial,[1] the arguments of counsel, and the law, and being otherwise fully informed, hereby finds that the Defendant is not guilty.

## FINDINGS OF FACT

I.      Stipulation.

The parties have stipulated to three of the elements of the offense charged in the Indictment, re-entry of a removed alien, in violation of 8 U.S.C. Sections 1326(a) and 1326(b). Specifically, the parties agree, and the Court finds, that (1) the Defendant was deported from the

---

[1] The Court only considered the testimony and exhibits admitted at trial. The Court did not consider the October 4, 2007, letter written by the Defendant's brother, Alonzo A. Urquiri, because that letter was submitted after the close of evidence.

United States on February 3, 1999 (Pl's Exh. 7), (2) the Defendant returned to the United States and was found on or about July 31, 2006, in Eddy County in the State and District of New Mexico, and (3) when the Defendant was found, the Defendant had not obtained permission from the Attorney General or the Secretary of Homeland Security to apply for permission to re-enter the United States [Doc. 49].

The parties dispute whether the Defendant was an alien at the time of the offense charged in the Indictment.

II.     The Defendant's Status.

United States Border Patrol Agent Robert Moreland testified that the Immigration and Customs Enforcement Bureau (ICE) keeps records related to any kind of immigration documentation in an alien registration file and that this file is often referred to as an "A file." The Defendant, as well as his father Mr. Abraham Urquidi, both have A files.

The Defendant's A file contains the Defendant's N-600 Application for Certificate of Citizenship based upon derivative citizenship through the Defendant's father (Pl's Exh. 2), filed July 7, 1997. The Defendant's father, Mr. Abraham Urquidi, was issued a United States Certificate of Citzenship on April 11, 1974, declaring Mr. Abraham Urquidi a citizen from his birth on March 16, 1935 (Pl's Exh. 3). Mr. Abraham Urquidi derived his citizenship through his mother.

The Defendant's A file also contains an N-600 Memorandum (Pl's Exh. 1), dated September 29, 1998, written by Sophie Ha, a District Adjudications Officer. In the Memorandum, Ms. Ha concludes that the Defendant is ineligible for derivative citizenship because the documentation submitted by the Defendant failed to indicate that his father physically was present in the United States for ten years prior to the Defendant's birth. In the

Application, the Defendant indicated that his father Abraham Urquidi resided in the United States from 1972 to the present, which was after the Defendant's birth. The Defendant was born in Ojinaga, Chihuahua, on May 8, 1963 (Pl's Exhs. 5, 5A, & 6).

III.     Mr. Urquidi's Trial Testimony.

Based upon Abraham Urquidi's trial testimony, the Court finds that the statement in the Defendant's Application for Certificate of Citizenship that Abraham Urquidi resided in the United States only from 1972 to the present is not accurate. Abraham Urquidi credibly testified that he first came to the United States in 1949, when he was fourteen years old. Prior to arriving in the United States, Mr. Urquidi had attended school in Mexico for six years, from the age of seven to thirteen or fourteen. Thereafter, Abraham Urquidi crossed the border into the United States for the first time. Every year thereafter, through 1962, Mr. Urquidi worked and was present in the United States. Abraham Urquidi also worked and was present in the United States after the Defendant's birth. Although Mr. Urquidi testified that he could not remember exact dates when he worked, he could remember what seasons he typically worked for each job, and how long those seasons lasted.

When Abraham Urquidi first came to the United States in 1949, he could only work in manual labor, cleaning cotton, because he was only fourteen years old. Mr. Urquidi testified that the cotton season, at that time, lasted approximately six months. Mr. Urquidi was employed cleaning cotton for three or four seasons, from 1949 to 1952 or 1953. Although Mr. Urquidi could not testify to the exact dates he worked in the cotton industry in those years, he could testify that he would work the duration of each cotton season, which, for cleaning cotton, lasted approximately six months, until the conclusion of the cotton harvest. Mr. Urquidi worked in the cotton industry in different places, including Balmorhea, Texas. During this time, Mr. Urquidi

lived with his Aunt Perfecta Rodriguez for two years, and with his uncle for one year.  For three years, from 1949 to 1952, Mr. Urquidi spent approximately three weeks total in Mexico.  Mr. Urquidi estimates that he returned home for one week at a time.

In 1952, Mr. Urquidi worked in Redford, Texas, but toward the end of 1952, he returned to Balmorhea to work with his aunt and uncle.  He did not, however, live with his aunt during this time.  Mr. Urquidi worked approximately six months in the United States in 1952.

After 1952, Mr. Urquidi still worked in the United States, but in different places.  In 1953, he was in Balmorhea for approximately seven months when United States Immigration deported him back to Mexico.  Mr. Urquidi returned to the United States after being deported.

At some point, Mr. Urquidi stopped working in manual labor in cotton, and started working at cotton gins, where cotton is processed after it has been picked.

From 1954 to 1958, Mr. Urquidi credibly testified that he worked in the United States at various places, but that he also began working on cattle ranches.  Mr. Urquidi, however, could not testify precisely at what cattle ranches he worked.  He could testify that during this four-year period of time, it was his practice to work a season lasting at least nine months.

Sealed documentation from the Mexican Government (Def's Exh. A) indicates that from 1958 to 1961, for three years, Mr. Abraham Urquidi worked as a bracero in the United States.  Mr. Urquidi worked in the United States near Ojinaga, Chihuahua, which is on the Mexican side of the United States/Mexican border.  He therefore returned to Mexico approximately one time a month to visit and give money to his family.  Each visit, however, he would return to the United States that same night.

In 1961, Mr. Abraham Urquidi testified that he worked the entire year in the United States as a bracero.  In 1962, the year before the Defendant's birth, Abraham Urquidi testified

that he was in the United States the whole year, and that he worked in the United States for approximately eight to nine months.  Mr. Urquidi, however, could not remember where he worked.

With the exception of the documentation from the Mexican Government indicating that Mr. Urquidi was a bracero in the United States from 1958 to 1961, Mr. Urquidi does not have evidence to corroborate his testimony that he was physically present the United States between 1949 and 1963.  The Court, however, does not find Mr. Urquidi's testimony less credible because of the absence of documentation.  While Mr. Urquidi was a bracero, he was always paid cash.  The Court finds it credible that one crossing the border, unsanctioned, would not keep evidence of his border crossings.  The Court further finds it credible that Mr. Urquidi's employers would have paid him cash and that no employment records would exist.

The Court finds Abraham Urquidi's testimony to be credible, having considered Mr. Urquidi's answers to the questions and having observed his demeanor while testifying.  The Court therefore finds that Mr. Urquidi was present every year in the United States for the majority of the fourteen years prior to the Defendant's birth.  Although Mr. Urquidi did not know the exact dates he worked in the United States, he could testify to his practice of staying a certain number of months in the United States, depending upon the nature of the work he was doing.  The fact that Abraham Urquidi admitted that he did not know the exact days and months he was in the United States, and that he did not have evidence to document all of the dates he was in the United States, does not undermine the credibility of Mr. Urquidi's testimony.  To the contrary, if Mr. Urquidi had testified to exact dates, given the (understandable) lack of documentation and the passage of time, his testimony would be less credible.  It was precisely

because of Mr. Urquidi's imprecise form of testimony, which relied upon his practice of working a certain number of months for each type of job, that the Court found his testimony credible.

Accordingly, the Court finds that in 1949, 1950, 1951, and 1952, Abraham Urquidi was physically present in the United States for at least six months of the year (or, for two years over a four-year period). The Court further finds that Mr. Urquidi was present in the United States for at least seven months in 1953. The Court also finds that Mr. Urquidi was present in the United States for at least nine months of the year in 1954, 1955, 1956, and 1957 (or, for three years over a four-year period). The evidence also establishes that Mr. Urquidi was present in the United States for the entire years of 1958, 1959, 1960, and 1961. Finally, the evidence indicates that Mr. Urquidi was in the United States for a minimum of eight months in 1962. Based upon these findings, the Court concludes that between 1949 and the Defendant's birth on May 8, 1963, Mr. Abraham Urquidi was physically present in the United States for a minimum of ten years and three months cumulatively.

IV.     Abraham Urquidi's Statements in 1973.

The contrary statements made by Abraham Urquidi in 1973 are not sufficiently reliable or specific to impeach or otherwise undermine Mr. Urquidi's present testimony before this Court. Mr. Urquidi's earlier statements are internally inconsistent, which renders them inherently unreliable. Moreover, Mr. Urquidi's prior statements are ambiguous. With these ambiguities and inconsistencies, it is impossible to discern with any sense of accuracy from those statements when Mr. Urquidi was in the United States prior to the Defendant's birth.

Abraham Urquidi filed an Application for Certificate of Citizenship (contained in Mr. Urquidi's A file) on January 29, 1973 (Pl's Exh. 8). Thereafter, Mr. Urquidi appeared before an Adjudication Officer, Oscar G. Galvan, General Attorney (Nationality), on May 22, 1973, and

the Officer asked Mr. Urquidi to answer the same Application questions he already had answered in writing.  Mr. Galvan made handwritten corrections and additions in red ink based upon Mr. Urquidi's oral responses to the Application questions.  Mr. Urquidi's written answers on his Application were different, at times, from his oral answers to the Application questions.

For example, Mr. Urquidi originally indicated in his written answer that he had arrived in the United States at Presidio, Texas in October of 1970.  At the interview with Mr. Galvan, however, Mr. Urquidi stated that he had arrived in the United States in 1951.  Likewise, Mr. Urquidi indicated in his written answer that he had not been out of the United States since he arrived in 1970.  At his interview, however, Mr. Urquidi noted that he had been out of the country and returned on several occasions.  Specifically, Mr. Urquidi indicated at his interview that he had arrived in the United States in 1951, that he had left the United States in 1951, that he had returned to the United States in 1961, that he had left the United States in 1962, that he had returned to the United States in 1964, that he had left the United States in 1964, and that he had returned to the United States thereafter as a bracero (date crossed out).  It is unclear, from Mr. Galvan's handwritten corrections, whether Mr. Urquidi returned to the United States in 1961 or 1964 (or both 1961 and 1964) as a bracero.  Mr. Urquidi further informed Mr. Galvan that he had returned to the United States for six months in 1954.  Based solely upon the evidence contained in Mr. Abraham Urquidi's oral responses to the Application questions, it appears as though Mr. Urquidi was in the United States for approximately one year prior to the Defendant's birth in 1963.

Approximately four months later, on September 10, 1973, Abraham Urquidi made a statement in Spanish (without an interpreter) before Mr. Galvan, titled Record of Sworn Statement--Witness (Pl's Exh. 10).  The Sworn Statement, however, is in English, and does not

indicate who translated the Statement or whether Mr. Urquidi was given the opportunity to review the Statement.  At the end of the Statement, Susana Guerra from the Immigration and Naturalization Service certified that to the best of her knowledge the Sworn Statement was a true report of everything that had been stated during the course of the hearing, excluding statements made off the record, taken by Ms. Guerra from her shorthand notes.  Because the Statement indicates that no interpreter was used, it is not clear how Ms. Guerra was able to certify the Statement, which was given in Spanish but recorded in English.  If Ms. Guerra spoke, understood, and could translate Spanish, it is unclear whether she was certified to do so.  And, if she was certified, it is unclear why the Sworn Statement would indicate that an interpreter was not used.  Moreover, Ms. Guerra's certification indicates that she did not record comments made off of the record.  It therefore is unclear whether Mr. Urquidi made additional comments or whether the Sworn Statement is complete.  The Record of Sworn Statement also contains mistakes, which were corrected with white out.  It is unclear where the corrections came from or how the mistakes were discovered.

     Mr. Urquidi's Sworn Statement contains answers that are inconsistent with the answers he gave both orally and in writing to the questions in the Application for Certificate of Citizenship.  For example, in his oral response to the Application questions, Mr. Urquidi informed Mr. Galvan that after spending part of the year in the United States in 1951, he did not return to the United States until 1954, when he spent six months here.  In the Sworn Statement, however, Mr. Urquidi states that after spending his first three months in the United States in 1951, he returned to the United States that same year (in 1951) to work for three years as a bracero.  The Sworn Statement also indicates that prior to coming to the United States as a bracero, Mr. Urquidi had been in the United States about three times.  Mr. Urquidi's Sworn

Statement further indicates that U.S. Immigration arrested him in 1958, while his written and oral Application responses indicate that he was in Mexico during 1958.

United States Immigration and Customs Enforcement Agent Morgan Langer testified that Mr. Urquidi's testimony in the Sworn Statement and his oral responses to the Application questions were generally consistent. The Court does not agree. Rather, the Court finds that Mr. Urquidi's written answers to the Application questions, oral answers to the Application questions, and answers to the Sworn Statement questions are inconsistent. The Court also finds that Mr. Urquidi's answers, and many of the dates he provides, are ambiguous and contradictory and that it is not possible to determine based upon the information in Mr. Urquidi's A file precisely when he was in the United States and for how long he was in the United States.

Other evidence also contradicts Mr. Urquidi's 1973 statements. Mr. Urquidi's A file contains an Affidavit of Ben Garcia, which indicates that Mr. Garcia has known Mr. Urquidi for one year, and that Mr. Urquidi worked for him in 1954 for a little over one year. This affidavit testimony is inconsistent with Mr. Urquidi's oral answer to the Application question indicating that he was in the United States for only six months in 1954.

Finally, the Court notes that evidence in the form of sealed documentation from the Mexican Government (Def's Exh. A) establishes that Mr. Urquidi was a bracero in the United States between 1958 and 1961. This documentation supports Mr. Urquidi's present testimony, and is clearly contradictory to his 1973 Sworn Statement, in which Mr. Urquidi indicates he was a bracero in 1951, or his oral answers to the Application questions, which indicate that he was a bracero in either 1961, 1964, or both years. This documentation further indicates that it is Mr. Urquidi's present testimony that is reliable, and that his statements in 1973 are not reliable.

In addition to the 1973 statements being plagued by inconsistencies and ambiguities, the

Court further notes that the adjudicator asking the questions did not attempt to clarify the record or otherwise challenge any of the inaccuracies, contradictions, or ambiguities in Mr. Urquidi's responses.  Moreover, Mr. Urquidi did not have the benefit of counsel to help clarify the record.

The Court also finds that Mr. Urquidi's 1973 responses were to questions posed in a different context, in which Mr. Urquidi's presence in the United States was not relevant and his parent's presence in the United States was the sole issue before the adjudicator.  The Application, for example, asks when Mr. Urquidi "arrived in the United States," and Mr. Urquidi wrote "Oct. 1970."  At trial, Mr. Urquidi explained that he wrote 1970 because that is when he came to the United States to start "fixing for [his] citizenship."  He believed the question was asking when he arrived in the country in the context of seeking to obtain his citizenship, and not when he first arrived in the country to work, which is a credible explanation.

The Court further finds that the Sworn Statement by Mr. Urquidi is inherently unreliable given the fact that the person certifying the Statement indicates that it does not include comments made off of the record, it is unclear how the Statement was interpreted from Spanish to English and whether that interpretation was reliable, it is unclear why words were covered with white out and changes made, and it is unclear whether Mr. Urquidi had an opportunity to review the testimony and the changes thereto.

Finally, the Court is not persuaded by the Government's argument that Mr. Urquidi's testimony at trial was not credible because it was motivated by a desire to help his son, and that his 1973 statements were somehow reliable (despite their shortcomings).  One reasonably could infer that Mr. Urquidi's 1973 statements were not reliable because they were motivated by the desire to ignore information regarding Mr. Urquidi's unsanctioned border crossings--information that was irrelevant to the question whether Mr. Urquidi had derivative citizenship through his

parent. Nor is the Court persuaded that because the Statement says Mr. Urquidi did not remember answers to some of the questions posed to him in 1973 that he does remember now, that his 1973 statements were accurate while his present day testimony is not. Mr. Urquidi was not represented in 1973, and it is unclear whether he was prepared to respond to irrelevant questions regarding his border crossings. Moreover, it is reasonable to infer that Mr. Urquidi may not have wished to highlight his border crossings in this context.

Under the foregoing circumstances, the Court concludes that Mr. Urquidi's former statements and the other documentation from 1973 are not sufficiently reliable to impeach his present testimony. The Court had the opportunity to observe Mr. Urquidi's demeanor and listen to the entirety of his testimony at trial, and concluded that his testimony was credible. The Court did not have the same opportunity with respect to the inconsistent and incomplete statements of Mr. Urquidi in 1973. Accordingly, the Court concludes that Mr. Urquidi's present testimony was more credible than the unreliable documentation of Mr. Urquidi's statements from 1973.

V.      Other Evidence from 1973.

The Government maintains that a sworn statement made by Abraham Urquidi's Aunt Perfecta Rodriguez further impeaches Mr. Urquidi's testimony. Mr. Urquidi's A file contains a Ms. Rodriguez's Record of Sworn Statement--Witness, which she made on November 21, 1973 (Pl's Exh. 11). The Statement was made in Spanish, without an interpreter, and without any indication who translated the Statement or whether Ms. Rodriguez was given the opportunity to review the Statement. At the end of the Statement, Susana Guerra from the Immigration and Naturalization Service certified that to the best of her knowledge the Sworn Statement was a true report of everything that had been stated during the course of the hearing, excluding statements made off the record, taken by Ms. Guerra from her shorthand notes. Because the Statement

indicates that no interpreter was used, it is not clear how Ms. Guerra was able to certify the Statement, which was given in Spanish but recorded in English.  If Ms. Guerra spoke, understood, and could translate Spanish, it is unclear whether she was certified to do so.  And, if she was certified, it is unclear why the Sworn Statement would indicate that an interpreter was not used.  Moreover, Ms. Guerra's certification indicates that she did not record comments made off of the record.  It therefore is unclear whether Ms. Rodriguez made additional comments or whether the Sworn Statement is complete.  The Record of Sworn Statement also contains mistakes, which were corrected with white out.  It is unclear where the corrections came from or how the mistakes were discovered.

In the Sworn Statement, Ms. Rodriguez indicates that Abraham Urquidi lived with her for one month in 1952 or 1953, instead of the two years Mr. Urquidi testified that he lived with his aunt.  The word "month" however, is typed over white out, which covers the word "time."  It is not clear why this change was made, and as the Court already has noted, it is not clear who interpreted the document or whether Ms. Rodriguez was given the opportunity to review the document and the changes made thereto.  One "time" is very different from one "month," and if Ms. Rodriguez did say "time," her statement would be consistent with Mr. Urquidi's present statement that he lived with his aunt once, for two years.  For this reason, as well as the reasons the Court found Mr. Urquidi's Sworn Statement unreliable, the Court finds that Ms. Rodriguez's Sworn Statement is unreliable and not sufficient to impeach Abraham Urquidi's present testimony.

## DISCUSSION

The parties have stipulated to three elements of the offense of re-entry of a removed alien, in violation of 8 U.S.C. Sections 1326(a) and 1326(b)--namely, that (1) the Defendant was

deported from the United States on February 3, 1999, (2) the Defendant returned to the United States and was found on or about July 31, 2006, in Eddy County in the State and District of New Mexico, and (3) when the Defendant was found, the Defendant had not obtained permission from the Attorney General or the Secretary of Homeland Security to apply for permission to re-enter the United States. The only factual question presented at the bench trial is whether the Defendant was an alien at the time of the Indictment. With respect to this element, the Defendant asserts the defense of derivative citizenship.

The Immigration and Nationality Act in effect at the time of the Defendant's birth provides in relevant part,

> [A] person born outside the geographical limits of the United States . . . of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States . . . for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years . . . is a national and citizen of the United States.

8 U.S.C. § 1401(a)(7) (1952).

While it is the Government's burden to prove alienage beyond a reasonable doubt, the Government need not prove the Defendant's lack of derivative citizenship. *United States v. Hodulik*, No. 00-6300, 2002 WL 1396904, *4 (6th Cir. June 26, 2002); *United States v. Garcia-Mancha, Jr.*, No. 2:96-CR-0021(01), 2001 WL 282769, *8-9 (N.D. Tex. Mar. 15, 2001). Rather, if the Defendant wishes to rebut the Government's assertion of his alien status, he may do so by raising the defense of derivative citizenship. *Hodulik*, 2002 WL 1396904, *4. It is the Defendant's burden to prove that he is entitled to the defense of derivative citizenship. *Id.*

The Court concludes that the Defendant has satisfied his burden of rebutting the Government's assertion of his alien status by demonstrating that he is entitled to the defense of

derivative citizenship.  The Government maintains that the information in Abraham Urquidi's A file, obtained from statements he made in 1973, conclusively establish that Mr. Urquidi was in the United States for well under ten years prior to the Defendant's birth.  The Court already has found, however, that Mr. Urquidi's 1973 statements are inherently unreliable.  The Court further has found that Mr. Urquidi credibly testified that he was physically present in the United States for a period of ten years  prior to the Defendant's birth, more than five of which after attaining the age of fourteen years.

The Court therefore concludes that the Defendant has produced credible evidence sufficient to rebut the Government's charge of alienage, an essential element of the offense of re-entry of a removed alien.  The Government therefore cannot establish beyond a reasonable doubt that the Defendant was an alien at the time he was found in the United States, or that he is guilty of the offense charged in the Indictment.

## CONCLUSION

For the foregoing reasons, the Court finds the Defendant **NOT GUILTY** of the offense charged in the Indictment.

Dated this 18th day of October 2007.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE